IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HANOVER AMERICAN INSURANCE COMPANY, | ) ) ) ) |
| Plaintiff, | ) ) No. 2:20-cv-02834 ) Related Case No. 2:16-cv-02817 |
| v. | ) ) |
| TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, CHRISTOPHER C. BROWN, and JOHN FALLS, | ) ) ) ) ) |
| Defendants. | |

**ORDER GRANTING PLAINTIFF'S MOTION TO ENJOIN JOHN FALLS' STATE COURT ACTION
AND ENJOINING STATE COURT PROCEEDING**

**ORDER DENYING DEFENDANT JOHN FALLS' MOTION TO STAY**

**ORDER DENYING DEFENDANT JOHN FALLS' MOTION TO DISMISS**

The cause is before the Court on Plaintiff Hanover American Insurance Company's ("Hanover") Motion to Enjoin John Falls' State Court Action, filed January 13, 2021 (ECF No. 17). Also before the Court are Defendant John Falls' ("Falls") Motion to Dismiss for Failure to State a Claim, filed January 19, 2021 (ECF No. 24) and Motion to Stay, filed January 22, 2021 (ECF No. 28). The Court has considered the pending motions. For the reasons discussed below, Plaintiff's Motion to Enjoin is **GRANTED**, Falls' Motion to Dismiss is **DENIED**, and Falls' Motion to Stay is **DENIED**.

1

I.     **Background**

This case stems from a first declaratory action filed by Hanover American Insurance Company ("Hanover"), regarding an insurance policy for Studio B at the former House of Blues studio located on Rayner Street in Memphis, Tennessee.  In the first declaratory action, <u>Hanover American Ins. Co. v. Tattooed Millionaire Entertainment, LLC</u>, Case No. 2-16-cv-02817 (W.D. Tenn. 2016) ("Hanover I"), Hanover filed to recover advance insurance payments and other damages incurred in connection with the claimants' insurance claims arising from a 2015 arson fire and alleged theft at the House of Blues recording studio.  (ECF No. 17-1 at PageID 57.)  In <u>Hanover I</u>, a jury found that Defendants Brown and Tatttooed Millionaire Entertainment ("Brown/TME Defendants") made material misrepresentations with the intent to deceive and committed unlawful insurance acts during the claims process.  (<u>Id.</u> at PageID 58.)  The jury determined that Hanover was entitled to recover the advance payments that had been made to the Brown/TME Defendants in the sum of $2,208,898.49.  (<u>Id.</u>)  The jury also found, however, that Defendant Falls did not make material misrepresentations or commit unlawful insurance acts, and determined that he was entitled to the full policy limit of $2,500,000 for Business Personal Property ("BPP") coverage for music and recording equipment owned by Brown/TME.  (<u>Id.</u>)  The jury also found in favor of Falls for business income ("BI") in the amount of $250,000, which was the remainder owned for the $500,000 in BI coverage.  (ECF No. 24-1 at PageID 130.)

Following the jury verdict, Hanover filed a Rule 50(b) motion to set aside the verdict, noting in part that any payment to Brown for the BPP under Falls' policy would violate Tennessee public policy in <u>Box v. Lanier</u>, 79 S.W. 1042 (Tenn. 1904).  (<u>Id.</u> at PageID 130.)  The Court granted this motion and entered an amended judgment that vacated the judgment with respect to Falls.  (ECF No. 24-7 at PageID 544.)  On appeal, the Sixth Circuit reinstated the jury verdict in favor of

Falls, and remanded with instructions to reinstate the jury verdict and proceed with an interpleader action. See Hanover Am. Ins. Co. v. Tattooed Millionaire Entertainment, LLC, 974 F.3d 767 (6th Cir. 2020) ("Hanover I Appeal"). Specifically, the Sixth Circuit wrote the following regarding the public policy arguments and dispute between Falls and the Brown/TME Defendants:

> The jury awarded Falls $2,500,000 as the amount of insurance he was owed, up to his policy limit, for Business Personal Property coverage and $250,000 as the balance of the Business Income insurance he was owed.…The BPP payment covers the loss of the gear in Falls'[] studio. However, Brown is the ultimate owner of the lost gear, on which Falls had a perpetually renewable leasehold.
>
> Therefore, Hanover agues, payment of the $2,500,000 would violate public policy, because Brown would ultimately benefit from his own wrongdoing.…
>
> The public-policy argument, however, even if accepted, does not mean that Falls takes nothing of the $2,500,000 BPP award. Falls had a property interest in the 'gear,' in the form of his leasehold with unlimited renewal options. Leaseholds have been held to be insurable interests. More to the point, Hanover clearly accepted at trial that Falls had at least an arguable property interest: Barkman testified at trial that the payment for BPP under the Falls policy would go to Falls and Brown jointly. Thus, Barkman said, it would have to be endorsed by Brown to be cashed by Falls. **As Falls'[] counsel explained to us at oral argument, the proceeds will become the subject of an interpleader action between Falls, Brown, Hanover, and Brown's other creditors.**
>
> This was the district court's plan for how to handle the issue: Falls and TME would 'sue each other' in the event of a win, but not fight it out during the main trial. Though Falls and Hanover both make interesting legal arguments as to the disposition of the funds, we see no reason to short-circuit the plan. Such arguments can be made in whatever subsequent proceedings arise over this payment.
>
> Hanover Am. Ins. Co., 974 F.3d at 790–91 (emphasis added).

On December 15, 2020, the Court entered a Second Amended Judgment reinstating the jury's $2,500,000 BPP award in accordance with the Sixth Circuit's Decision. See ECF Nos. 429, 433 in Case No. 2:16-cv-02817.

On August 17, 2020, Falls filed a breach of contract and declaratory action against the Brown/TME Defendants in state court. Falls v. Brown, Case No. CT-3322-20 (Shelby County Cir. Ct. Aug. 17, 2020) ("State Court Proceeding"). Falls asserts that it did not include Hanover in that litigation because its claims are derivative of the primary dispute between Falls and the Brown/TME Defendants. (ECF No. 41 at PageID 757.) After Falls had filed its action in Shelby County Circuit Court, Hanover filed a complaint for interpleader and declaratory relief on November 16, 2020. See ECF No. 1 in Civil Action No. 2:20-cv-2834 ("Hanover II"). Hanover asserts that it is seeking a declaration that the jury's $2,500,000 BPP award is null as a matter of Tennessee public policy, and in the alternative, asks the Court to resolve the various competing claims to the $2,500,000 BPP proceeds. (ECF No. 17-1 at PageID 59.) Hanover also asks this Court to enjoin the State Court Proceeding. ("Motion to Enjoin," ECF No. 17-1 at PageID 60.)

**II. Analysis**

*a. Hanover's Motion to Enjoin*

The Court first addresses Hanover's Motion to Enjoin the State Court Proceedings. Hanover's Motion to Enjoin asks that the Court "enjoin the Falls state court action so that all competing claims to the $2.5 million BPP funds can be adjudicated on the merits" and that its "request falls squarely within the 'in aid of jurisdiction' and 'necessary to effectuate a judgment' exceptions to the Anti-Injunction Act." (ECF No. 17-1 at PageID 60.) Hanover argues that "[i]n light of the potential difficulties presented by parallel pending actions regarding the single, finite $2.5 million fund, Hanover respectfully requests that this Court enjoin the Tennessee state court action pending resolution of this interpleader action." (Id.) 28 U.S.C. § 2283 provides that:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

22 U.S.C. § 2283.

Accordingly, the Anti-Injunction Act provides three avenues of exceptions. Hanover asserts that the "injunction sought in this instance falls squarely within the second and third exceptions[.]" (ECF No. 17-1 at PageID 61.) The first question before the Court, therefore, is whether the "necessary in aid of its jurisdiction" exception applies. In <u>Atlantic Coast Line R.R. Co v. Brotherhood of Locomotive Eng'rs</u>, the Supreme Court stated that this exception may apply where "federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." 398 U.S. 281, 295 (1970). Here, the Sixth Circuit specifically preserved issues of public policy and, as noted by Hanover, "recognized that there would need to be further proceedings in the form of an 'interpleader action' to resolve competing claims to the jury's $2,5000,000 BPP award under the Falls policy." (ECF No. 17-1 at PageID 58; <u>see</u> <u>also</u> <u>Hanover Am. Ins. Co.</u>, 974 F.3d at 790–791.) Hanover argues that Hanover, Falls, and Brown/TME all have asserted claims to a single, finite fund of $2.5 million BPP policy proceedings, and its "interpleader action was filed to bring these competing claims before the Court in a single action thereby avoid the risk of multiple litigation leading to multiple liability with respect to this single fund." (<u>Id.</u> at PageID 63.) Hanover further argues that the State Court Proceeding "seriously threatens this Court's flexibility and authority to adjudicate the various claims to the interpled fund in the present case[.]" (<u>Id.</u> at PageID 63.)

The most relevant authority on the Court's ability to grant an injunction based on the "necessary in aid of its jurisdiction" exception comes from the Sixth Circuit's decision in <u>Lorillard</u>

5

Tobacco Co. v. Chester. 589 F.3d 835 (6th Cir. 2009). In Lorillard, the Sixth Circuit presided over an interpleader action brought in district court to determine the distribution of attorneys' fees from 1990s tobacco litigation. Id. Specifically, it determined "whether the district court's injunction against the Florida state-court litigation [was] within the scope of the court's permanent injunction in its final judgment and, if so, whether this action violate[d] the Anti-Injunction Act." Id. at 845. The Sixth Circuit found that "the district court's injunction [was] necessary in aid of its jurisdiction because [Appellant's] state-court claims threatened[ed] the district court's ability to administer the class settlement fund[.]" Id. at 848. Some of the facts relate to the situation in this proceeding. In Lorillard, Appellant Gentry "allege[d] and [sought] a declaration in the state-court action that [Appellee] Fant transferred back to Gentry the right to the supplemental payments." Id. Accordingly, the Sixth Circuit wrote, "If this is true, then Fant had no right to pledge the supplemental payments as collateral to Deutsche Bank, and therefore Deutsche Bank had no entitlement to receive the payments from the district court." Id. Thus, Lorillard involved a federal dispute over a finite fund of money in which there was also a pending state-court claim. Id.

Here, there is a similar finite fund of money with competing interests between Falls, Hanover, and Brown/TME. Furthermore, despite Falls' contentions to the contrary, Hanover is an interested party with respect to his dispute over the funds with Brown/TME. Additionally, the most relevant guidepost is the Sixth Circuit's explicit language in the Hanover I Appeal, which "recognized that there would need to be further proceedings in the form of an 'interpleader action' to **resolve competing claims to the jury's $2,500,000 BPP award under the Falls policy**." 974 F.3d at 790–791. As was the case in Lorillard, "[a] determination of this factual dispute by the state court could have preclusive effect on the federal interpleader case and therefore would

interfere with the district court's ability to distribute the settlement fund." Id. (internal citation omitted). Allowing the State Court Proceeding to continue would appear to be in contravention to the Sixth Circuit's order to this Court, and would risk preclusive judgment with respect to the rights of Falls and Brown/TME, and risk of continued, prolonged, and piecemeal litigation in this case. Furthermore, the court in Lorillard distinguished between tangentially-related state-court claims and those that directly allege and turn on the same entitlements as those in the federal district court litigation:

> Despite Gentry's claims to the contrary, this is not a case in which we are being asked to determine whether a district court may properly enjoin a state-court action involving tort claims that are only '**tangentially related**' to the subject matter of the federal case. See United States v. Ford Motor Co., 522 F.2d 962, 966–67 (6th Cir. 1975) (reasoning that an interpretation of the Anti-Injunction Act that enables a federal court 'to enjoin a state court proceeding whenever the state suit is tangentially related to the prior federal judgment would unduly expand the Congressional exceptions' to that statute); cf. Sandpiper Village Condo Ass'n, Inc. v. La.-Pac. Corp., 428 F.3d 831, 844 (9th Cir. 2005) (concluding that an injunction was not necessary in aid of the district court's jurisdiction where the state-court litigation did *not* seek to 'contest the payment of funds to class members or make a claim on the settlement fund')….In the present matter, Gentry's state-court complaint **does not set forth claims 'in a manner sufficiently detached'** from the district court's administration of the settlement fund to avoid the permanent injunction in the federal interpleader action's final judgment. (citation omitted). Accordingly, the **district court did not err in enjoining the litigation of the state court action as necessary in aid of its jurisdiction**.

Lorillard, 589 F.3d at 850 (emphasis added).

Here, Falls asserts that "[t]he dispute in Falls v. Brown concerns Falls and Brown/TME's respective rights to the $2.5 million BPP award as well as other breach of contract claims" and that the state-court dispute is "first and primary." (ECF No. 41 at PageID 762.) The Court disagrees and Falls has not provided support from the record for the contention that the Falls and Brown/TME dispute would be "first and primary." Falls asserts that "Brown/TME's rights to the

BPP must first be determined before Hanover's secondary, derivative claim against Brown/TME can be resolved." (Id.) This is not the case. Falls' state court action seeks to assert the same rights that were contemplated by the proposed interpleader action in the Sixth Circuit's opinion in the Hanover I Appeal. As stated by Hanover, "Falls' Tennessee state court action here is not only 'tangentially related' to the subject of the present interpleader action, but directly alleges and seeks a declaration of Falls' entitle to the BPP proceeds."[1] (ECF No. 17-1 at PageID 64–65.) The Court agrees. This case fits within the "necessary in aid of its jurisdiction" exception of the Anti-Injunction Act, and enjoining the Falls' state court proceeding is consistent with the Sixth Circuit's ruling in Hanover I. The Court further agrees with Hanover's contention that "litigation of these issues before this Court would not inconvenience the parties any more than the state court proceedings would, and this Court's familiarity with the parties and issues suggests that judicial economy would be promoted by requiring all interested parties to assert their claims to the $2.5 million BPP fund in this Court." (ECF No. 17-1 at PageID 65.) The Court hereby **GRANTS** Hanover's Motion, and **ENJOINS** the Falls' state court proceeding. Having found that a permanent injunction of the Falls' state court proceeding qualifies as an exception based on its necessity in aid of this Court's jurisdiction over the interpleader action, the Court does not make a finding regarding the other exceptions or on Rule 65 of the Federal Rules of Civil Procedure.

    b. *Falls' Motion to Dismiss*

Falls also seeks dismissal of Hanover's declaratory action claims as to Falls because: "(1) Hanover is barred by res judicata from arguing against Falls' recovery on the BPP, (2) Hanover's public policy arguments appear to apply only to TME and Brown, (3) Hanover's possible public

---

[1] The parties provided further argument for their respective positions at the June 22, 2021 motion hearing, where it became clear that allowing the Falls state court proceeding to move forward could preclude Hanover's interest from being litigated as between Falls and Brown/TME. (ECF No. 66.)

policy argument against Falls has no basis in Tennessee law, or alternatively (4) the Court should decline to exercise jurisdiction over this novel state-law issue." (ECF No. 24-1 at PageID 129.) Falls also asks that this Court "dismiss Hanover's interpleader claim (Count II) because this lawsuit is inappropriate for interpleader (in contrast to a possible interpleader for the derivative dispute between Hanover and Brown/TME)." (Id.)

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss only tests whether the plaintiff has pleaded a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal,

556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd 481 F. App'x 252 (6th Cir. 2012).

### i. Res Judicata

First, Falls argues that "[a]ny claim by Hanover that Falls is not entitled to a portion of the $2.5 million is barred by res judicata and the judgment from the First Declaratory Action." (ECF No. 24-1 at PageID 134.) The parties dispute which rules of preclusion apply here. The Court clarifies that in diversity cases, federal law incorporates the rules of preclusion applied by the forum state. See Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508–09 (2001). The Sixth Circuit also recently clarified and corrected its own holding in Rawe v. Liberty Mutual, which Falls cites to:

> Admittedly, we held in Rawe v. Liberty Mutual Fire Ins. Co., that 'federal res judicata principles apply' in 'successive diversity actions.' 462 F.3d 521, 528 (6th Cir. 2006) (citing J.Z.G. Res., Inc. v. Shelby Ins. Co., 84 F.3d 211, 214 (6th Cir. 1996)). But although Rawe was decided after Semtek, **Rawe does not bind us here**. The general rule that we must follow the published decisions of a prior panel 'yields when the prior panel's reasoning has been undercut or abrogated by the Supreme Court.' United States v. White, 920 F.3d 1109, 1113 (6th Cir. 2019) (citing Ne. Ohio Coal for the homeless v. Husted, 831 F.3d 686, 720–21 (6th Cir. 2016)). This is so 'even in the unusual situation where binding circuit precedent overlooked Supreme Court authority,' Husted, 831 F.3d at 720, which is the case here. **Rawe did not discuss Semtek and offered no support for its conclusion other than to cite to a pre-Semtek decision of this court.** 462 F.3d at 528. Because Semtek undercuts Rawe's reliance on our earlier caselaw, **we must follow Semtek rather than Rawe**.…Accordingly, because the federal court that decided the parties' earlier case under its diversity jurisdiction sat in New York, we must apply New York preclusion rules to its decision.

N.D. Mgmt, Inc. v. Hawkins, 787 F.App'x 891, 896 (6th Cir. 2019) (emphasis added).

10

Here, Tennessee rules of preclusion therefore apply. In Tennessee, "when an issue has been actually and necessarily determined in an earlier proceeding between the parties, that determination is conclusive against the parties in subsequent proceedings." Mullins v. State, 294 S.W.3d 529, 535 (Tenn. 2009). "The party invoking collateral estoppel has the burden of proof." Id. "To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded." Id.

The parties dispute whether this issue has already been litigated. For an issue to have been "actually litigated" for purposes of collateral estoppel, "the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment." Mullins, 294 S.W.3d at 535 (internal citations omitted). "Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect." Id.

Falls asserts that "Hanover has already litigated in [Hanover I] whether Falls himself is entitled to a recovery of the BPP and lost in the jury trial and on appeal[,]" and that "Hanover had an opportunity to raise all arguments as to why Falls would have been precluded from any recovery of BPP." (ECF No. 24-1 at PageID 135.) In response, Hanover asserts that its "public policy claim was properly raised and submitted for determination by its Rule 50(b) motion and its appellee brief in the Sixth Circuit in the underlying action," but that the "Court did not address the public policy issue in its ruling on the Rule 50(b) motion and the Sixth Circuit did not make a

determination as to the public policy claim." (ECF No. 43 at PageID 779–80.) Here, the Sixth Circuit's opinion regarding the interpleading action indicates that the public policy question was not decided and was not necessary for the judgment. See Hanover Am. Ins. Co., 974 F.3d at 790–91. Accordingly, Falls' motion to dismiss on the basis of collateral estoppel is **DENIED**.

ii. **Public Policy Arguments as to Falls**

Next, the Court addresses Falls' argument that "Hanover's claims and arguments relating to public policy should be limited to Brown/TME." (ECF No. 24-1 at PageID 136.) The Court finds that Hanover has alleged sufficient facts to support its public policy claim against Falls. It is a long-held axion of Tennessee public policy that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." Box v. Lanier, 79 S.W. 1042, 1045 (Tenn. 1904). As pointed out by Hanover, "Falls' argument ignores the fact that Tennessee public policy prevents payment of the $2.5 million BPP insurance proceeds regardless of the jury's findings as to Falls" because "Brown/TME is the owner of the insured gear, and as the judgment in the underlying action currently stands, the BPP funds are payable both to Falls and to Brown/TME." (ECF No. 43 at PageID 781.) Whether Falls is barred from recovery based on Hanover's public policy arguments thus turns on the "economic unit" analysis outlined in K&T Enterprises, Inc. v. Zurich Ins. Co., 97 F.3d 171, 178 (6th Cir. 1996). Whether or not Brown/TME and Falls are an "economic unit" for the purposes of the judgment in the underlying case is a relevant factual question that the Court does not reach at this time. Nonetheless, at this juncture, Hanover has sufficiently pled a public policy claim against Falls' recovery of the BPP fund. Falls' motion to dismiss on this ground is **DENIED**.

### iii. **Grand Trunk Factors**

Finally, the Court addresses Falls' argument that it should decline to review this declaratory action. This Court considers five factors (the Grand Trunk factors) in determining whether the exercise of Declaratory Judgment Act jurisdiction is appropriate:

> (1) Whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

United Specialty Ins. Co. v. Cole's Place, Inc., 936 F.3d 386, 396 (6th Cir. 2019) (citing Grand Trunk W.R.R. Co. v. Consol. Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984)).

Consistent with its ruling in part II.a of this Order, the Court finds that retaining jurisdiction over this action would settle the controversy *in its entirety* by providing a declaration as to each of the parties' rights to the $2.5 million BPP funds in one convenient forum. Furthermore, the Court finds that there is no alternative remedy which is better or more effective. If the Court were to decline to rule on this declaratory action, it would be in direct contravention of the 6th Circuit's guidance in Hanover I, and would require piecemeal litigation at both the state and federal levels. Accordingly, Falls' motion to dismiss based on jurisdiction is **DENIED**.

### iv. **Ripeness**

Finally, the Court finds that consistent with its findings in this Order, Hanover's interpleader action is both appropriate and ripe for resolution in this forum. Hanover argues that "Falls' argument fails to acknowledge that joint payment of the BPP award to both Falls and Brown/TME would constitute a clear violation of well-established Tennessee public policy, as per Hanover's outstanding public policy claim." (ECF No. 43 at PageID 786.) While the Court does

13

not rule on this question, it does find that Hanover has sufficiently pled this allegation, and that Hanover's public policy argument is not barred by *res judicata*, as discussed in II.b.i of this Order. Consequently, Hanover's interpleader action is ripe for resolution in this forum. This was also discussed at the June 22, 2021 motion hearing, at which the parties indicated that they were prepared to proceed in this forum if Falls' Motion to Stay were to be denied or if Hanover's Motion to Enjoin the State Court Proceeding were to be granted. As discussed above, Hanover's Motion to Enjoin is granted, which leaves this proceeding as the appropriate forum to resolve the competing claims to the BPP fund. Accordingly, Falls' motion to dismiss is **DENIED** on this point. Hanover's claims are not contingent on the outcome of Falls' declaratory action against Brown/TME.

    c. *Falls' Motion to Stay*

Falls seeks to stay Hanover II until the primary dispute between Falls and the Brown/TME Defendants is resolved in the State Court Proceeding. (ECF No. 28-1 at PageID 613.) Falls asserts that "[t]he dispute between Falls and Brown/TME Defendants is the primary remaining issue that must be resolved before Hanover's and others' secondary claims to Brown/TME's portion of the BPP." (Id. at PageID 614.) As an alternative to its motion to dismiss, Falls asks this Court to "stay this matter pending resolution of Falls' state court declaratory action based on the Court's inherent power to stay cases and/or the Colorado River abstention doctrine." (Id.)

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). "In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court

may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums." Id. at 818 (internal citations omitted). "Only the clearest of justifications will warrant dismissal." Id. at 819. Here, the parties agreed at the June 22, 2021 motion hearing that the Court should either enjoin the State Court Proceeding or stay the current proceeding. (ECF No. 66.) Because the Court has granted Hanover's Motion to Enjoin the State Court Proceeding, the issues regarding Falls' Motion to Stay are necessarily resolved. Consistent with the Court's findings in part II.a of this Order, Falls' Motion to Stay is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, Hanover's Motion to Enjoin is **GRANTED**. Falls' Motion to Dismiss is **DENIED**. Falls' Motion to Stay is **DENIED**. The State Court Proceeding in Falls v. Brown, Case No. CT-3322-20 (Shelby County Cir. Ct. Aug. 17, 2020) is **HEREBY ENJOINED** based on the Court's finding that such an injunction is necessary in aid of this Court's jurisdiction in accordance with the Anti-Injunction Act and consistent with the Sixth Circuit's ruling in the Hanover I Appeal.

**SO ORDERED**, this 25th day of June, 2021.

                                              /s/ Jon P. McCalla
                                              JON P. McCALLA
                                              UNITED STATES DISTRICT JUDGE