IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HANOVER AMERICAN INSURANCE COMPANY,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, CHRISTOPHER C. BROWN, and JOHN FALLS,  )<br>)<br>)<br>)<br>)<br>Defendants.  )<br>) | Case No. 2:20-cv-02834-JPM-cgc |

**ORDER GRANTING IN PART AND DENYING IN PART HANOVER'S PARTIAL MOTION TO DISMISS TME/BROWN'S FIRST AMENDED COUNTERCLAIM**

Before the Court is Plaintiff Hanover American Insurance Company's ("Hanover") Partial Motion to Dismiss filed on August 29, 2022. (ECF No. 91.)  Hanover moves the Court to dismiss with prejudice the counterclaims brought by Plaintiffs Tattooed Millionaire Entertainment, LLC ("TME") and Christopher C. Brown ("Brown") (collectively "TME/Brown" or "Brown/TME") for conversion, set-off, and breach of contract.  The Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND

The factual and procedural background, as summarized by the Hanover and agreed to by TME/Brown, is as follows:

> [T]he Complaint for Interpleader and Declaratory Relief arises out of a jury trial that was held in this Court in November 2018, in the matter of Hanover American

Insurance Company v. Tattooed Millionaire Entertainment, LLC, et al., Civil Action No. 2:16-cv-02817-JPM-tmp ("the Original Action"), and a subsequent ruling by the United States Court of Appeals for the Sixth Circuit in that case. See Hanover Am. Ins. Co. v. Tattooed Millionaire Entertainment, LLC, 974 F.3d 767, 790–91 (6th Cir. 2020). [(ECF No. 1 ¶ V.)]

The Original Action involved insurance claims submitted to Hanover in connection with a 2015 arson fire and alleged theft at the House of Blues recording studio located on Rayner Street in Memphis, Tennessee. A few months before the arson fire, TME/Brown secured over $10 million in insurance coverage from Hanover for the House of Blues building, for Brown's music and recording equipment located inside (i.e., business personal property or "BPP"), and for lost business income ("BI"). John Falls allegedly leased a studio in the building from Brown and went to the same local retail insurance agent as Brown to secure his own separate insurance policy from Hanover, providing $2.5 million in additional BPP coverage for Brown's equipment and $500,000 in BI coverage. [(Id. ¶ VI.)]

After discovering that certain claim submissions contained falsified documents and fake invoices, Hanover sued TME/Brown and Falls in the Original Action seeking to recover advance insurance payments that had been made and other damages incurred in connection with the defendants' insurance claims. Notably, in response to Hanover's First and Second Amended Complaints in the Original Action, TME asserted a counterclaim against Hanover seeking recovery of additional funds under its insurance policy. [(See [the Original Action, ECF Nos. 68, 86.)] As part of its counterclaim in the Original Action, TME made the following factual allegations regarding CTS and the alleged movement of gear to Florida:

> 19. Within a few days of the fire, Hanover also engaged Coastal Technology Services ("CTS") as its expert in evaluating the BPP. CTS was at the Building within a few days after the fire and inspected the equipment in the building.
>
> 20. Subsequently CTS moved some of the equipment that had been fire damaged to a warehouse in Florida. CTS also left some of the fire damaged equipment in Memphis.
>
> 21. CTS made a list of equipment that was shipped to Florida and a list of equipment in Memphis.

[(See the Original Action, ECF No. 68 at PageID 1843; see also the Original Action, ECF No. 86 at PageID 2447–48.)] For his part, Brown made similar allegations in his answer in the Original Action in response to Hanover's First Amended Complaint: "As a matter of fact, Hanover's own expert, CTS, had removed some of the equipment that Hanover claimed never existed to Hanover's / CTS's warehouse in Florida." [(See the Original Action, ECF No. 67 at PageID 1819.)] Finally, in response to Hanover's Third Amended Complaint in the Original

2

Action, TME and Brown again noted that "CTS, Hanover's expert, kept much of [the gear] stored in a warehouse in Florida." [(See the Original Action, ECF No. 203 at PageID 6460.)]

At the conclusion of the trial in the Original Action, the jury found that TME and Brown are indistinguishable, and that TME/Brown made material misrepresentations with the intent to deceive and committed unlawful insurance acts during the claims process. Based on these findings, the jury determined that Hanover was entitled to recover the advance payments that had been made to TME/Brown ($2,208,898.49). However, the jury found that Falls himself did not make material misrepresentations or commit unlawful insurance acts, and determined that he was entitled to the full policy limits under his policy. [(ECF No. 1 ¶ IX.)]

Following the trial, the Court granted Hanover's Rule 50(b) motion and entered an amended judgment providing that Falls recover nothing and that he must repay the $250,000 BI advance he had received from Hanover. On appeal, the Sixth Circuit affirmed the jury's verdict as to TME/Brown, but reversed the Court's post-trial ruling and amended judgment as to Falls and remanded with instructions to reinstate the jury verdict as to Falls. In doing so, the Sixth Circuit specifically recognized that there would need to be further proceedings in the form of an "interpleader action" to resolve competing claims to the jury's $2,500,000 BPP award under the Falls policy. [(Id. ¶ X.)]

After the mandate was issued by the Sixth Circuit in the Original Action, Hanover filed the captioned matter seeking a declaratory judgment that the $2,500,000.00 BPP award to Falls violates Tennessee public policy and, to the extent that the award to Falls is not declared null and void in its entirety, that the Court determine the various competing claims to the BPP funds.

On January 29, 2021, TME/Brown filed their original answer and counterclaim in the captioned matter. [(ECF No. 23.)] Hanover then filed a Motion to Dismiss the original counterclaim. [(ECF No. 37.)] In response, TME/Brown moved to amend the original counterclaim. [(ECF Nos. 57, 59.)] This matter was then stayed on July 28, 2021, pending resolution of John Falls' interlocutory appeal of the Court's ruling enjoining Falls' related state-court action. [(ECF No. 74.)] However, the Court subsequently granted TME/Brown's motions for leave to file their First Amended Counterclaim. [(ECF Nos. 76, 77.)] TME/Brown then filed the First Amended Counterclaim into the record on August 27, 2021. [(ECF No. 78.)] On September 10, 2021, notwithstanding the stay, Hanover filed a partial motion to dismiss to comply with the response deadline imposed by Fed. R. Civ. P. 15(a)(3). [(ECF No. 80.)] On July 22, 2022, the Court received the mandate from the Sixth Circuit regarding Falls' interlocutory appeal, and the stay of the case was lifted. [(ECF No. 85.)] On August 15, 2022, the Court denied without prejudice Hanover's partial motion to dismiss and indicated that Hanover could re-file its

3

motion following the August 22, 2022 scheduling conference. . . . [Hanover re-filed its partial motion to dismiss on August 29, 2022.  (ECF No. 91.)]

Among other things, the First Amended Counterclaim repeats the allegations from TME's and Brown's responsive pleadings in the Original Action regarding CTS's movement of certain gear to Florida, but instead of seeking insurance proceeds under its policy, TME/Brown now attempt to assert counterclaims for conversion and breach of contract and seek a set-off for the alleged value of that property against the judgment entered against TME/Brown in the Original Action:

> 11.  In addition, *during June or July, 2016, while purporting to adjust the several claims for fire and theft losses, Hanover along with Coastal Technical Services, LLC took possession of gear and other personal property belonging to Brown/TME and transported it to Orlando, Florida, denying Brown/TME an opportunity in inspect the property.*  By its action Hanover has exercised exclusive possession and control of the personal property and has wrongfully deprived Brown/TME of the use of the gear and property. Since Brown/TME have not been provided an accurate inventory of the personal property taken by Hanover discovery is required to inspect the property in order to determine its value, even though Brown/TME allege the property to have a value of no less than $4,000,000.
>
> 13.  By its conduct Hanover has converted personal property belonging to the counterclaimants, the value of which can only be determined through discovery, for which the counterclaimants are entitled to a set-off against the judgment rendered against them. After setting off the value of the converted property against the judgment there remains nothing owed by counterclaimants to Hanover and therefore the counterclaimants are entitled to receive the entire proceeds of $2,500,000 without any payment due to Hanover on the judgment.

[(ECF No. 78 (emphasis added) (note that the First Amended Counterclaim does not contain a ¶ 12).)]  The only substantive changes between the original counterclaim and the First Amended Counterclaim are the addition of several allegations in paragraphs 5–10 that, based upon a March 16, 2021 visit to CTS by TME/Brown's associate Charles Matthews, "the gear that remains in the warehouse is significantly less than the amount of the recording equipment and gear which CTS and Hanover removed from the building in July, 2016."  [(ECF No. 78 at PageID 1119.)]

(ECF No. 91-1 at PageID 1264–69; see also ECF No. 92-1 at PageID 1352 (TME/Brown's statement that "[t]he factual and procedural background stated by Hanover in its memorandum fairly states the proceedings in this case up to this point").)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage. Id. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations.

Twombly, 550 U.S. at 570.  A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678–79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd, 481 F. App'x 252 (6th Cir. 2012).

Assessing the facial sufficiency of a complaint ordinarily must be undertaken without resorting to matters outside the pleadings.  Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010).  "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also Koubriti v. Convertino, 593 F.3d 459, 463 n.1 (6th Cir. 2010).  Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial Money Ctr., 508 F.3d at 335–36; see also Garton v. Crouch, 2022 WL 275519 (M.D. Tenn. 2022) (citing Brent v. Wayne Cyt. Dep't of Human Servs., 901 F.3d 656, 694 (6th Cir. 2018)) ("[I]t has long been the rule that a court may consider, not only the Complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, 'so long as they are referred to in the Complaint and are central to the claims contained therein.'").

In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." Northville Downs v. Granholm, 622 F.3d 579 (6th Cir. 2010) (citing Commercial Money Ctr., Inc., 508 F.3d 327, 335–36 (6th Cir. 2007)).  Courts may "take judicial notice of developments in related proceedings in other courts of record." Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 553 n.2 (6th Cir. 2021); Walburn v. Lockheed Martin Corp., 431 F.3d 966, 972 n.5 (6th Cir. 2005); Delozier v. Jacobs

6

Engineering Group, Inc., 2021 WL 1538787.  Federal courts may also take judicial notice of "the content of court records."  Fed. R. Evid. 201(b)(2).

Courts should not take judicial notice of documents contained in an earlier proceeding for the truth of matters subject to reasonable dispute.  Stafford v. Jewelers Mut. Ins., 554 Fed. Appx. 360, 369 (6th Cir. 2014).  The use of documents filed in other proceedings "is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." Passa v. City of Columbus, 123 Fed. App'x 694, 697 (6th Cir. 2005) (citations omitted).  The transcript of a prior hearing "may be considered for determining the fact that the hearing occurred, that certain issues were considered," and for determining the disposition of the prior motion.  Tutstone v. Garner, No. 1:12CV2963, 2014 WL 991947, at *1 (N.D. Ohio Mar. 13, 2014).

### III. ANALYSIS

Hanover moves the Court to dismiss with prejudice TME/Brown's "claims for conversion, set-off, and breach of contract contained in the 'affirmative defense' on page 8, and the following paragraphs 5-13 and 'Wherefore' paragraph (c), of the First Amended Counterclaim."  (ECF No. 91.)  Hanover argues that each of these claims are barred by claim preclusion because they are compulsory counterclaims that should have been raised in the Original Action.  (Id. at PageID 1260.)  Hanover also argues that the conversion counterclaim is barred by the statute of limitations and that the breach of contract claim is not plausible on the merits.  (Id.)

#### A. The Breach of Contract Claim

TME/Brown concedes that its counterclaim for breach of contract does not state a plausible claim because Hanover was not a party to, and did not sign, the relevant contract. (ECF No. 92-1 at PageID 1356.)  A review of the contract, which was submitted attached to the pleadings,

confirms this as well.  (ECF No. ECF No. 78-1.)  Accordingly, TME/Brown's counterclaim alleging breach of contract is **DISMISSED WITH PREJUDICE**.

### B. Claim Preclusion

Hanover argues that each of the claims for conversion and set-off should be dismissed with prejudice as being barred by the doctrine of claim preclusion.  (ECF No. 91-1 at PageID 1270.)

The Federal Rules of Civil Procedure Rule 13(a) defines compulsory counterclaims, and requires that

> (1) In General. A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim:
>
> > (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> > (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a).  "[A] claim's compulsory status depends on whether (1) the claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (2) the claim is one that the party 'has' at the time that the party is to file his responsive pleading." Bauman v. Bank of America, N.A., 808 F.3d 1097, 1101 (6th Cir. 2015) (quoting Kane v. Magna Mixer Co., 71 F.3d 555, 562 (6th Cir. 1995)).  "A 'party's failure to plead a compulsory counterclaim forever bars that party from raising the claim in another action.'" Id. (quoting Sanders v. First Nat'l Bank & Trust Co. in Great Bend, 936 F.2d 273, 277 (6th Cir. 1991)).

#### i. *The counterclaims do not arise out of the same transaction or occurrence*

In analyzing whether a counterclaim is a compulsory counterclaim to the original action, the first question is whether

> the two claims "arise" out of the same transaction or occurrence. Rather than look to whether the original claim and counterclaim literally arise out of the same transaction or occurrence, we ask, "Is there a logical relationship between the two claims?" See Maddox v. Ky. Fin. Co., 736 F.2d 380, 382 (6th Cir. 1984). "Under

> this test, we determine whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." Sanders, 936 F.2d at 277 (citing Moore v. New York Cotton Exch., 270 U.S. 593, 46 S.Ct. 367 (1926)) (emphasis added). A partial overlap in issues of law and fact does not compel a finding that two claims are logically related. See Peterson v. United Accounts, Inc., 638 F.2d 1134, 1137 (8th Cir.1981).

Bauman, 808 F.3d at 1101.

Hanover argues that TME/Brown's counterclaims each arise out of the same transaction or occurrence as that in the Original Action. (ECF No. 91-1 at PageID 1272.) Specifically, Hanover argues that the Original Action and current claims at issue relate to the November 5, 2015 arson fire and the subsequent handling of the associated insurance claims. (Id.) Hanover argues that "CTS's alleged movement of certain gear to Florida . . . was repeatedly alleged as part of TME's and Brown's responsive pleadings in the Original Action." (Id.)

In Response, TME/Brown argue that the claims in the Original Action and the Counterclaims in the instant actions do not arise out of the same transaction or occurrence because the Original Action concerned the recovery of money that Hanover paid to TME/Brown, while the instant action concerns Hanover's interpleader action to recover money under John Falls's insurance policy. (ECF No. 92-1 at PageID 1353–54.)

In Reply, Hanover argues that the different relief requested in the Original Action and the instant action are immaterial because "[c]laim preclusion applies not only to every claim that should have been raised in prior litigation, but also to 'every theory of recovery that could have been presented.'" (ECF No. 93 at PageID 1360 (quoting Cedillo v. TransCor Am., LLC, 131 F. Supp. 3d 734, 742 (M.D. Tenn. 2015)).)

The counterclaims in the instant action do not arise out of the same transaction or occurrence as the Original Action. The Original Action was brought to recover insurance payments that Hanover paid to TME/Brown based on allegedly falsified documentation following

9

an arson fire of a recording studio. (See the Original Action, ECF No. 197.) In contrast, the counterclaim for conversion in the instant action relates to Hanover's alleged conversion of personal property that it removed from the studio following the fire. (ECF No. 78 at PageID 1118–20.) While both actions stem from the Parties' conduct in response to the same arson fire, they each present different issues of law and fact and require different evidence to support or refute the claims. Bauman, 808 F.3d at 1101. The facts and law relevant to prove or disprove conversion might include actions taken by CTS and/or Hanover in its handling and control of TME/Brown's property. See generally Pero's Steak and Spaghetti House v. Lee, 90 S.W.3d 614, 623 (Tenn. 2002). In contrast, the relevant law and facts in the Original Action were those relating to TME/Brown's actions in filing allegedly fraudulent insurance claims. (See generally the Original Action.) While there is a "partial overlap in issues of law and fact," this overlap is not sufficient to "compel a finding that two claims are logically related." Bauman, 808 F.3d at 1101.

> ii. TME/Brown has pled sufficient facts to support an argument that it did not "have" the cause of action for conversion during the Original Action

Based on the pleadings, it is unclear whether the conversion claim was a claim that TME/Brown could have brought during the Original Action. Under Tennessee law, "the tort of conversion is complete and the injury occurs at the moment the tortfeasor appropriates the [claimant's] property to his or her own use or benefit by exercising dominion over it in violation of the true owner's right." Pero's Steak, 90 S.W.3d at 623 (Tenn. 2002).

Hanover argues that TME/Brown could have brought the conversion claim during the Original Action because TME/Brown alleged the same facts as it alleges now regarding movement of gear to Florida as part of TME's and Brown's responsive pleadings in the Original Action. (ECF No. 91-1 at PageID 1272–73 (citing the Original Action, ECF No. 68 at PageID 1843).) Hanover argues that TME/Brown could have asserted these claims in the Original Action because

10

they knew that the equipment had been transported to Florida at the time that they filed their responsive pleading in the Original Action. (Id. at PageID 1273.)

In Response, TME/Brown argues that TME/Brown became aware of the facts giving rise to the counterclaim on March 16, 2021, and therefore the facts upon which the counterclaims are based did not exist at any time during the pendency of the Original Action. (ECF No. 92-1 at PageID 1354.)

In Reply, Hanover reiterates its argument that TME/Brown were aware of the facts upon which the counterclaim is based at the time of the Original Action, because TME's and Brown's responsive pleadings repeatedly discuss CTS's alleged movement of certain gear to Florida. (ECF No. 93 at PageID 1360–61.)

In their January 3, 2017 Answers to the First Amended Complaint in the Original Action, TME/Brown made multiple references to CTS and Hanover removing equipment and transporting it to a warehouse in Florida. (The Original Action, ECF No. 67 at PageID 1819, ECF No. 68 at PageID 1832.) Based on these statements made by TME/Brown, they knew at that time that the equipment had been transported to Florida by CTS. However, it is not clear whether TME/Brown was aware of, or had reason to believe, that Hanover or CTS had appropriated the relevant "property to his or her own use or benefit by exercising dominion over it in violation of the true owner's right," which is required for the completion of conversion. Pero's Steak, 90 S.W.3d at 623. TME/Brown did not indicate in their Answers to the First Amended Complaint that they opposed CTS's removal of the equipment, and the fact that TME/Brown entered into a contract with CTS for the removal of the equipment makes it plausible that the initial removal of the equipment was done with TME/Brown's consent. (ECF No. 78 at PageID 1118–19; ECF No. 78-1.) It is unclear based on the pleadings and their attached documents alone at what point

Hanover's and/or CTS's conduct changed from simply storing TME/Brown's property with permission to instead allegedly constituting conversion. TME/Brown has made sufficient factual allegations asserting that the cause of action did not exist during the pendency of the Original Action and would therefore not be a compulsory counterclaim.

>  iii. *The counterclaims in the instant action are not barred by the doctrine of claim preclusion*

Because the counterclaims in the instant action do not arise out of the same transaction or occurrence as the Original Action, they were not compulsory counterclaims that must have been brought during the Original Action. Because TME/Brown's conversion counterclaim was not a compulsory counterclaim to the Original Action, the doctrine of claim preclusion does not bar TME/Brown from bringing this counterclaim in the instant action. Accordingly, Hanover's motion relating to set off and conversion being barred by claim preclusion is **DENIED**.

### C. Statute of Limitations

In addition to arguing that the counterclaims are barred by claim preclusion, Hanover argues that TME/Brown's conversion counterclaim and any set off are barred by the applicable statute of limitations. (ECF No. 91-1 at PageID 1274.) Hanover argues that under Tennessee law, the statute of limitations for a conversion claim is three years, and TME/Brown filed their conversion counterclaim more than four years after they knew, or should have known, of the alleged conversion. (Id. at PageID 1275.) Hanover argues that despite being characterized as a set-off against the judgment in the Original Action, the counterclaim is still subject to the same statute of limitations rules as any other claim or counterclaim. (Id.)

In Response, TME/Brown argues that Hanover has misstated the case law, and that an affirmative defense of set-off can be applied in contract cases, even if it unavailable in tort cases. (Id.) TME/Brown further argues that they did not discover the conversion of the property until

March 16, 2021, and that the statute of limitations is tolled under Tennessee's discovery rule. (ECF No. 92-1 at PageID 1355–56.)

In Reply, Hanover argues that TME/Brown's assertion that they did not learn of the claims until March 16, 2021 is not plausible given that their responsive pleadings filed in the Original Action made repeated references to the underlying factual allegations for the conversion counterclaim. (ECF No. 91-1 at PageID 1361.)

"Pursuant to the Erie doctrine, state statutes of limitations must be applied by federal courts sitting in diversity." Blaha v. A.H. Robins & Co., 708 F.2d 238, 239 (6th Cir. 1983) (citing Guaranty Trust Co. v. York, 326 U.S. 99 (1945)).  Under Tennessee law, the statute of limitations for claims of detention or conversion of personal property is three years. Tenn. Code Ann. § 28-3-105(2).  The period of limitations for a claim for conversion in Tennessee begins to run from the accruing of the cause of action, and a cause of action accrues when the plaintiff knew or reasonably should have known that a cause of action existed.  Johnson v. Craycraft, 914 S.W.2d 506, 511 (Tenn. Ct. App. 1995.)  While TME/Brown has framed the counterclaim as a request for set-off, "a claim, asserted as a set-off, is subject to the same statute of limitations rules as any other claim or counterclaim" under Tennessee law.  Guesthouse Int'l Franchise Sys., Inc. v. British Am. Properties MacArthur Inn, LLC, No. 3:07-0814, 2009 WL 792570, *5 (M.D. Tenn. Mar. 23, 2009) (collecting cases).

> Under the "discovery rule" applicable in tort actions, . . . the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. McCroskey v. Bryant Air Conditioning Co., 524 S.W.2d 487, 491 (Tenn. 1975); see also Teeters v. Currey, 518 S.W.2d 512 (Tenn. 1974). The discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he had a right of action. Furthermore, the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not

put on inquiry. Hoffman v. Hospital Affiliates, Inc., 652 S.W.2d 341, 344 (Tenn. 1983).

Potts v. Celotex Corp., 796 S.W.2d 678, 680–81. (Tenn. 1990). "The issue of accrual of a cause of action is basically a question of fact for the trier of fact." Johnson v. Craycraft, 914 S.W.2d 506, 511–12 (Tenn. Ct. App. 1995).

As discussed above, it is unclear at what point the cause of action for conversion allegedly accrued. TME/Brown have alleged that the cause of action accrued on March 21, 2021, while Hanover alleges that it accrued no later than January 3, 2017. (ECF No. 91-1 at PageID 1275; ECF No. 92-1 at PageID 1355.) Because TME/Brown has pled facts sufficient to support a timely conversion counterclaim, it is inappropriate to dismiss the counterclaim at this stage.

Based on a review of the pleadings and the documents attached to the pleadings, TME/Brown has sufficiently pled cognizable counterclaims for set off and conversion. While facts brought forth during discovery might justify a finding that these claims are barred by either claim preclusion or the relevant statute of limitations, it is inappropriate to dismiss the counterclaims at this stage. Accordingly, Hanover's motion relating to set off and conversion being barred by the statute of limitations is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Hanover's Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. TME/Brown's counterclaim for breach of contract is **DISMISSED WITH PREJUDICE**, but TME/Brown may continue to assert their counterclaim for conversion and their affirmative defense of set off relating to Hanover's alleged conversion.

**IT IS SO ORDERED**, this 10th day of March, 2023.

                                              s/ Jon P. McCalla
                                              JON P. McCALLA
                                              UNITED STATES DISTRICT JUDGE