IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HANOVER AMERICAN INSURANCE COMPANY,  )<br>)<br>  Plaintiff,  )<br>)<br>v.  )<br>)<br>TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, )<br>CHRISTOPHER C. BROWN, AND JOHN )<br>FALLS,  )<br>)<br>  Defendants.  ) | Case No. 2:20-cv-02834-cgc |

**ORDER GRANTING HANOVER'S MOTION TO STRIKE JOHN FALLS' JURY DEMAND**

Before the Court is Plaintiff Hanover American Insurance Company's ("Hanover") Motion to Strike John Falls' Jury Demand, filed on July 10, 2023. (ECF No. 101.) John Falls ("Mr. Falls") filed his Response on July 25, 2023. (ECF No. 112.) Hanover filed its reply on August 1, 2023. (ECF No. 117.) For the reasons discussed below, Hanover's Motion is **GRANTED**.

I. **BACKGROUND**

The instant case is an interpleader action arising out of a jury trial in <u>Hanover Am. Ins. Co. v Tattooed Millionaire Entertainment, LLC</u>, No. 2:16-cv-02817-JPM-tmp (W.D. Tenn. 2016) ("<u>Hanover I</u>"). (ECF No. 1 at PageID 2.) In <u>Hanover I</u>, a jury trial was held pertaining to "insurance claims submitted to Hanover [by the Defendants in the instant case] in connection with a 2015 arson fire and alleged theft at the House of Blues recording studio located on Rayner

1

Street in Memphis, Tennessee." (ECF No. 101 at PageID 2039.) The Jury in Hanover I held that (1) Christopher C. Brown ("Mr. Brown") and Tattooed Millionaire Entertainment, LLC ("TME") were indistinguishable; (2) Mr. Brown/TME made material misrepresentations with the intent to deceive and committed unlawful insurance acts during the claims process, and thus Hanover was entitled to recover the advance payments to Mr. Brown/TME. (See Hanover I, ECF No. 312.) The Hanover I Jury also held that Mr. Falls did not make material misrepresentations or commit unlawful insurance acts, and thus awarded him the full policy limits under his policy, which included $2.5 million in Business Personal Property ("BPP") and additional $250,000[1] in Business Income ("BI"). Id.

After the jury trial concluded, this Court granted Hanover's Rule 50(b) motion for judgment notwithstanding the verdict and entered an amended judgment providing that Mr. Falls does not recover anything. The Sixth Circuit, however, reversed the post-trial ruling and remanded with instructions to reinstate the jury verdict as to Mr. Falls, which this Court did. See Hanover Am. Ins. Co. v. Tattooed Millionaire Entertainment, LLC, 974 F.3d 767 (6th Cir. 2020); (Hanover I, ECF No. 104-8.)

In the instant case ("Hanover II") Hanover filed its complaint for interpleader and declaratory relief on November 16, 2020. (ECF No. 1.) Hanover claims that the $2.5 million BPP insurance awarded to Mr. Falls is subject to multiple competing claims. (Id. at PageID 3.) Hanover's complaint seeks a declaration that the $2.5 million BPP award is null and void as a matter of Tennessee public policy, or in the alternative, asks the Court to resolve the various competing claims to the BPP insurance proceeds and declare to whom, and in what amount, those funds should be paid. (Id. at PageID 6-10.)

---

[1] This sum was additional to the $250,000 advance payment which Mr. Falls received from Hanover before Hanover I action was initiated.

Since the action has been filed Mr. Falls and Mr. Brown/TME both filed answers and counterclaims asserting that they are entitled to the BPP insurance proceeds. (ECF Nos. 70, 78.) Mr. Falls also filed an intervenor complaint asserting a claim for attorneys' fees against Mr. Brown/TME if Mr. Brown/TME is found to be entitled to the disputed funds. (ECF No. 62.)

## II.   LEGAL STANDARD

The Seventh Amendment to the United States Constitution provides, in pertinent part, that "[i]n suits at common law . . . the right of trial by jury shall be preserved." U.S. CONST. amend. VII. "The right principally allows an individual to demand a jury when a lawsuit will resolve legal, as opposed to equitable, rights." Exact Software North America, Inc. v. DeMoisey, 718 F.3d 535 (6th Cir. 2013) (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989)). The Sixth Circuit explained that the right to a jury trial attaches in "traditional common law proceedings" and "to other cases requiring the ascertainment and determination of legal rights." Hyde Properties v. McCoy, 507 F.2d 301, 304 (6th Cir. 1974) (citing Farmers-Peoples Bank v. United States, 477 F.2d 752, 756 (6th Cir. 1973)). "Suits involving solely equitable rights and remedies are outside the ambit of the Amendment." Id.

Historically, interpleader was "the exclusive province of the English chancellors, and today it is regarded as a traditional remedy of equity." Hyde Properties, 507 F.2d at 304-05 (citing 7 C. Wright & A. Miller, Federal Practice and Procedure, § 1701, at 351-52 (1972) (noting that "interpleader" is "an equitable remedy to resolve conflicting claims to a single fund"). However, "[w]hile the remedy may be considered as traditionally an equitable device, the Seventh Amendment's applicability should depend upon the classification of the controlling issue between the adverse parties." Id. at 305. To distinguish between legal and equitable

claims, the Sixth Circuit instructs that courts should look to the three factors set forth in the United States Supreme Court's decision in Ross v. Bernhard, 396 U.S. 531 (1970): "first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." Hyde Properties, 507 F.2d at 305 (citing Farmers-Peoples Bank, 477 F.2d at 756).

### III. ANALYSIS

Hanover argues that Mr. Falls is not entitled to a Jury Trial in the instant action under the Ross factors. (See generally ECF No. 101-1.) Below the Court analyzes each of those factors, before doing so, however, the Court first addresses they key question of classification of the controlling issue between the adverse parties. Hyde Properties, 507 F.2d at 304-05.

#### A. Controlling Issue Between the Adverse Parties

Hanover argues that this action is an interpleader action, where the only claims are equitable in nature. (ECF No. 101-1 at PageID 2043; ECF No. 117 at PageID 3401-2.) Mr. Falls on the other hand argues that he is entitled to a jury because: (1) there are various legal claims in this action; and (2) there are factual disputes in the instant case. (ECF No. 112 at PageID 3361-3.) The Parties therefore disagree as to the key question of the controlling issue in this action. While Hanover argues that this is an interpleader action, Mr. Falls argues that there are other legal and factual issues to be addressed. (Id.; ECF No. 101-1 at PageID 2043.)

Mr. Falls argues that "Hanover's interpleader action is merely a re-attempt to dispute [his] rights to the insurance proceeds[,]" forcing Mr. Falls to "relitigate whether Hanover has breached the insurance contract by refusing to pay the insurance proceeds." (ECF No. 112 at PageID 3362.) Mr. Falls argues that Hanover is "merely reasserting in Hanover II an argument from Hanover I that [Mr. Falls] did not have an insurable property interest in the equipment and

4

is thereby trying to avoid paying benefits to Falls under his policy." Mr. Falls' arguments rest entirely on the premise that this Court will allow Hanover to re-litigate in the instant case the issues that have already been decided by a jury in Hanover I. Hanover argues that there are "no genuine factual disputes," but if "the Court concludes there are factual disputes that require a trial, whether or not the trial will be a jury trial or bench trial must be determined by the legal analysis" under the Ross factors. (ECF No. 117 at PageID 3401.)

This Court is legally restrained from giving Hanover a second bite at the apple, and thus rehashing the issues that were properly decided by the jury in Hanover I. If any factual issues that have not been determined by the jury in Hanover I arise, however, the Court will rule on those issues based on the evidence presented during the instant trial. See Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 460 (1977) (noting that the Seventh Amendment "was never intended to establish the jury as the exclusive mechanism for fact-finding in civil cases").

Having reviewed Mr. Falls arguments and his counterclaim (ECF No. 70), and failing to find any additional legal claims, the court concludes that the controlling issue between the adverse parties is the interpleader issue. Thus, the Court's further analysis is based on this action being an interpleader action.

  B. *Ross Factor Analysis*

The first Ross factor asks the courts to look at the "pre-merger custom" for treating a particular type of action. Ross, 396 U.S. at 536-7. The "pre-merger custom" refers to how the Courts treated a particular action "prior to the merger of law and equity in the federal court system via the adoption of the Federal Rules of Civil Procedure in 1938. (ECF No. 101-1 at PageID 2043.) In the pre-merger period, it was well established that "the Seventh Amendment

did not provide for right to jury in interpleader actions." Hyde Properties, 507 F.2d at 305 (citing Liberty Oil Co. v. Condon Nat'l Bank, 260 U.S. 235 (1922)). The first Ross factor, therefore, weighs in favor of holding a bench trial in the instant action.

The second Ross factor focuses on the "remedy sought." In the instant case the Parties "have asserted competing declaratory judgment claims regarding their entitlement to the BPP insurance proceeds awarded by the jury in the original action." (ECF No. 101-1 at PageID 2044.) "In actions seeking declaratory relief, the right to a jury trial is preserved only where it otherwise exists." Golden v. Kelsey-Hayes Co., 73 F.3d 648, 661-62 (6th Cir. 1996) (citing Robinson v. Brown, 320 F.2d 503, 505 (6th Cir. 1963) ("The inclusion of a claim for declaration of rights in the complaint did not, in our opinion, convert an equity case into an action at law")). Here any judgment issued by this Court "will not be a separate money judgment but will instead simply award declaratory relief regarding the disposition of the BPP insurance proceeds." (ECF No. 101-1 at PageID 2044.) As such the remedies sought are equitable in nature, and thus a right to a jury trial does not inherently exist. The second Ross factor weighs in favor of a bench trial.

The third and final Ross factor evaluates the practical abilities and limitations of juries. See Hyde Properties, 507 F.2d at 305-6 ("a nonjury trial of the [fraudulent conveyance issues in an interpleader case] is both more efficient and more likely to produce a just result.") The instant case presents enormously intricate issues and posture. The history of the case, and a previous jury trial ruling on the factual issues severely complicate the instant matter. Also, the complexity of party relationships to this action only increase the difficulty of the subject matter. Thus, the Court holds that the jury is not particularly well qualified to address the elaborate subjects at issue in the instant case.

Given that all three Ross factors weigh in favor of holding a bench trial in the instant case, the Court **GRANTS** Hanover's Motion.

## IV. CONCLUSION

For the foregoing reasons, Hanover's Motion to Strike John Falls' Jury Demand is hereby **GRANTED**.

**SO ORDERED**, this 4th day of October, 2023.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE