IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HANOVER AMERICAN INSURANCE COMPANY,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, )<br>CHRISTOPHER C. BROWN, AND JOHN )<br>FALLS,  )<br>)<br>Defendants.  ) | Case No. 2:20-cv-02834-cgc |

**ORDER GRANTING IN PART AND DENYING IN PART HANOVER'S SUMMARY JUDGMENT MOTION AND GRANTING JOHN FALLS' SUMMARY JUDGMENT MOTION**

Before the Court are two Summary Judgment Motions: (1) Plaintiff Hanover American Insurance Company's ("Hanover's") Motion for Summary Judgment (the "Hanover MSJ"), filed on July 10, 2023 (ECF No. 100); and (2) John Falls' ("Falls'") Motion for Summary Judgment as to Hanover (the "Falls MSJ"), filed on July 14, 2023. (ECF No. 107.) Because both parties incorporate their Summary Judgment Motions in their replies to the other Parties' Motions for Summary Judgment, and because arguments in each of the Motions are heavily intertwined, the Court considers both Motions together.

Falls filed his Response to the Hanover MSJ on August 7, 2023. (ECF No. 122.) Christopher C. Brown ("Brown") and Tattooed Millionaire Entertainment, LLC ("TME") (collectively, "Brown/TME") filed their Response to the Hanover MSJ on August 7, 2023.

1

(ECF No. 120.) Malcom Brown Futhey, III, Futhey Law Firm PLC, and Park Morris (collectively, "Intervenors") filed their Response to the Hanover MSJ on August 7, 2023. (ECF No. 121.) Hanover filed its Reply to all three Responses on August 18, 2023. (ECF No. 124.) For the reasons discussed below, Hanover's MSJ is **GRANTED IN PART** and **DENIED IN PART**.

Hanover filed its Response to the Falls MSJ on August 11, 2023. (ECF No. 123.) Falls filed its Reply on August 25, 2023. (ECF No. 125.) For the reasons discussed below, Falls' MSJ is **GRANTED**.

I.  BACKGROUND

The instant case is an interpleader action arising out of a jury trial in Hanover Am. Ins. Co. v Tattooed Millionaire Entertainment, LLC, No. 2:16-cv-02817-JPM-tmp (W.D. Tenn. 2016) ("Hanover I"). (ECF No. 1 at PageID 2.) In Hanover I, a jury trial was held on "insurance claims submitted to Hanover [by Defendants in the instant case] in connection with a 2015 arson fire and alleged theft at the House of Blues recording studio located on Rayner Street in Memphis, Tennessee." (ECF No. 101-1 at PageID 1405.) The Hanover I jury held that (1) Christopher C. Brown ("Brown") and Tattooed Millionaire Entertainment, LLC ("TME") were indistinguishable; and (2) Brown/TME made material misrepresentations with the intent to deceive and committed unlawful insurance acts during the claims process, and thus Hanover was entitled to recover the advance payments made to Brown/TME. (See Hanover I, ECF No. 312.) The Hanover I jury also held that Falls did not make material misrepresentations or commit unlawful insurance acts, and thus awarded him the maximum amount covered by his

policy: $2.5 million in Business Personal Property ("BPP") and an additional $250,000[1] in Business Income ("BI"). Id.

After the jury trial concluded, this Court granted Hanover's Rule 50(b) motion for judgment notwithstanding the verdict and entered an amended judgment denying Falls' recovery. The Sixth Circuit, however, reversed the post-trial ruling and remanded with instructions to reinstate the jury verdict as to Falls, which this Court did. See Hanover Am. Ins. Co. v. Tattooed Millionaire Entertainment, LLC, 974 F.3d 767 (6th Cir. 2020) (Hanover 6th Cir. Decision); (Hanover I, ECF No. 104-8.) The Sixth Circuit opinion outlined that "Hanover clearly accepted at trial [in Hanover I] that Falls had at least an arguable property interest: Barkman testified at trial that the payment for BPP under the Falls policy would go to Falls and Brown jointly." Hanover 6th Cir. Decision at 790-1. The Sixth Circuit also pointed out that "Hanover could have objected and requested a jury instruction as to whether Brown's misbehavior could void Falls' policy. It could have requested that the verdict for Hanover I be structured to tie the issues together. It did neither," but instead tried to address the issue on appeal. Id. at 788. "Behavior of this sort, sometimes called 'lying in the weeds' or 'sandbagging,' should be strongly discouraged." Ibid.

In the instant case ("Hanover II") Hanover filed its Complaint for interpleader and declaratory relief on November 16, 2020. (ECF No. 1.) Hanover claims that the $2.5 million BPP insurance awarded to Falls is subject to multiple competing claims. (Id. at PageID 3.) Hanover's Complaint seeks a declaration that the $2.5 million BPP award is null and void as a matter of Tennessee public policy, or in the alternative, asks the Court to resolve the various

---

[1] This sum was additional to the $250,000 advance payment which Mr. Falls received from Hanover before Hanover I action was initiated.

competing claims to the BPP insurance proceeds and declare to whom, and in what amount, those funds should be paid. (Id. at PageID 6-10.)

Since the action has been filed, both Falls and Brown/TME filed Answers and Counterclaims asserting that they are entitled to the BPP insurance proceeds. (ECF Nos. 70, 78.) Falls also filed an Intervenor Complaint asserting a claim for attorneys' fees against Brown/TME if Brown/TME is found to be entitled to the disputed funds. (ECF No. 62.)

## II. LEGAL STANDARD

### A. *Summary Judgment*

The Federal Rules of Civil Procedure mandate the entry of summary judgment where "no genuine dispute as to any material fact" exists and "the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" if it provides a basis for a "rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)). "The reviewing court must assess the available proof to determine whether there is a genuine factual issue that justifies a trial." Bell v. U.S., 355 F.3d 387, 392 (6th Cir. 2004) (citing Matsushita, 475 U.S. at 587.). "In doing so, the court must view the facts and all the inferences drawn from such facts in the light most favorable to the nonmoving party." Id. (citing 60 Ivy Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).

The summary judgment movant bears the initial burden of demonstrating the absence of any genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970). "Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence . . . to defeat the motion for summary judgment." Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir. 1995) (citing Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248-49; LaPointe v. UAW, Local 600, 8 F.3d 376, 378 (6th Cir. 1993)). "The mere existence of a scintilla of evidence to support [the nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. (citing Anderson, 477 U.S. at 252). Furthermore, "[a] properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions." Bradley v. Wal-Mart Stores East, LP, 587 F. App'x 863, 866 (6th Cir. 2014) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

B. *Claim Preclusion/Res Judicata*

"Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that is should have been advanced in an earlier suit." Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984) (citing Restatement (Second) of Judgements, Introductory Note before ch. 3 (1982)); accord Heyliger v. State University and Community College System of Tennessee, 126 F.3d 849 (6th Cir. 1997). As this Court previously clarified, in diversity cases, federal law incorporates the rules of preclusion applied by the forum state, with limited exceptions. (ECF No. 67 at PageID 1023); See Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508–09 (2001) (citations omitted). But even if that was not the case, due to similarity of the federal and state standards for claim preclusion the application of either ends in the same result. Compare Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 528 (6th Cir. 2006) (holding that the four elements of claim preclusion are: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which could have been litigated in the prior action; and (4) an identity of the causes of action.") (quoting Kane v. Magna Mixer Co., 71 F.3d 555, 560 (6th Cir. 1995)

with <u>Jackson v. Smith</u>, 387 S.W.3d 486, 491 (Tenn. 2012). Tennessee state law states that claim preclusion applies where the movant shows:

> (1) [T]hat the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

<u>Jackson</u>, 387 S.W.3d at 491.

### III.  ANALYSIS

Before addressing the Hanover MSJ, the Court first looks to the preliminary issue of claim preclusion raised by the Falls MSJ. Because claim preclusion "may serve as a complete bar to relitigation, thus extinguishing the right of action against the same defendant, regardless of the merits of the claim," determination of this issue is a necessary predicate to the others before the Court. <u>Creech v. Addington</u>, 281 S.W.3d 363, 376 (Tenn. 2009).

#### A. *Claim Preclusion*

Hanover fails to present any arguments referencing the actual elements of claim preclusion. (<u>See</u> ECF No. 123 ("Because that critical omission defeats Falls' preclusion argument, Hanover will not burden the Court with any detailed discussion of the traditional preclusion elements.").) Hanover argues, as a preliminary matter, that the "Sixth Circuit specifically preserved … 'the disposition of the funds' [issues] that have been raised in this interpleader action." (<u>Id.</u> at PageID 3964.) Although the Court agrees that the Sixth Circuit preserved the interpleader action, the Sixth Circuit's Opinion does not preserve Hanover's ability to challenge Falls' right to portions of the BPP award. The Sixth Circuit specifically states that "the public-policy argument. . . even if accepted, does not mean that Falls takes nothing of the $2,500,00 BPP award. Falls had property interest in the 'gear,' in the form of

his leasehold with unlimited renewal options." Hanover 6th Cir. Decision at 790. Hanover seems to conflate the two separate causes of action for which it filed: (1) the declaratory judgment; and (2) the interpleader action. The Sixth Circuit decision appears to preserve only the latter of the two. This Court therefore intends to hear arguments of all Parties pertaining to the disposition of funds during the scheduled trial date.

Hanover also argues that the Court should deny the Falls MSJ as it denied Falls' Rule 12 Motion to Dismiss on Issue Preclusion, because the Court's Order stated that the "Sixth Circuit's opinion regarding the interpleading action indicates that the public policy question was not decided and was not necessary for the judgment." (ECF No. 123 at PageID 3959; ECF No. 67 at PageID 1025.) The public policy question, however, pertains to Brown/TME's ability to recover, not Falls'. Brown/TME may yet convince this Court that they should be the sole, or at least partial, payee of the BPP proceeds. If so, Hanover will be able to pursue its public policy argument against Brown/TME. The Courts earlier decision to deny Falls' Motion to Dismiss took place over two years ago, before it became clear to this Court that Hanover's declaratory judgment cause of action attempts to relitigate an issue decided by the jury in Hanover I. (ECF. No. 67.) Since this Court's decision on issue preclusion, the docket in this case has significantly matured, and the arguments asserted by Hanover in countless motions make it clear that Hanover is trying to get an impermissible second bite at the apple when it comes to Falls.

### B. Claim Preclusion

Claim preclusion requires the movant to meet four key elements. First, the movant must show that "the underlying judgment was rendered by a court of competent jurisdiction."

Jackson, 287 S.W.3d at 491.  There is no dispute that this Court had competent jurisdiction over Hanover I proceedings, so the first element of claim preclusion is met.

The second element requires the movant to show that "the same parties or their privies were involved in both suits."  Ibid.  Hanover I included the following parties: Hanover, Falls, Brown, TME and Daniel Mott.  See Hanover I.  The instant action includes all those parties with exception of Daniel Mott.  As such, the Court holds that the second element of claim preclusion is met.

The third element of claim preclusion requires "that the same claim or cause of action was asserted in both suits."  Jackson, 287 S.W.3d at 491.  "A 'party's failure to plead a compulsory counterclaim forever bars that party from raising the claim in another action.'"  Bauman v. Bank of America, N.A., 808 F.3d 1097, 1101 (6th Cir. 2015) (quoting Sanders v. First Nat'l Bank & Trust Co. in Great Bend, 936 F.2d 273, 277 (6th Cir. 1991)).  As the Falls MSJ points out, "Hanover had an opportunity to raise all arguments as to why Falls would have been precluded from any recovery of BPP" during Hanover I.  (ECF No. 107-1 at PageID 2795.)  The Sixth Circuit also pointed out that Hanover "could have requested that the verdict form [from the Hanover I trial] be structured so as to tie the issues [of Brown's misbehavior and Falls' policy] together[,]" but failed to do so.  Hanover 6th Cir. Decision at 788.

In its Answer to Counterclaim of Daniel R. Mott and John Falls for Hanover I, Hanover lists two defenses which show that the claim against Falls' recovery should have been brought in that action.  (See ECF 107-5.)  The Eleventh Affirmative Defense argues that TME's negligence should bar Falls' recovery, while the Seventeenth Affirmative Defense argues that Falls recovery is precluded "to the extent [Falls'] claimed losses are not covered as an insurable interest."  (Id at PageID 2861-2.)  As shown by Hanover's own filings, they should have raised

8

the issue of Falls' ability to recover the BPP proceeds in Hanover I. Furthermore, it is not the purview of this Court to allow the Parties to relitigate issues already decided by the jury. The jury in Hanover I awarded John Falls the BPP proceeds. (See Hanover I, ECF No. 312.) Although the Court will determine the portion of the BPP to which Falls is entitled during the trial for the instant case, the Hanover I jury decision precludes Hanover from arguing that Falls is not entitled to any of the BPP insurance proceeds. The Court therefore holds that the third element of claim preclusion is met.

The fourth and final element of claim preclusion requires the movant to show "that the underlying judgment was final and on the merits." Jackson, 387 S.W.3d at 491. The judgment entered in Hanover I was final after the jury trial and subsequent appeal to the Sixth Circuit concluded. As such the fourth element of claim preclusion is met.

Claim preclusion, as granted here, prevents Hanover from asserting claims or arguments against Falls regarding his interests in BPP, but it does not prevent Hanover from pursuing claims and arguments against TME/Brown.

### C. The Hanover MSJ

Based on the analysis above, Hanover is precluded from asserting claims or arguments against Falls regarding his interest in BPP. The Court therefore does not address any arguments in the Hanover MSJ pertaining to Falls as they are rendered moot. The Court does, however, address the arguments presented in Hanover's MSJ pertaining to Brown/TME, and Intervenors.

#### a. The Public Policy Argument Against Brown/TME

Hanover argues that "payment of the BPP insurance proceeds to Brown/TME would violate Tennessee public policy." (ECF No. 100 at PageID 1397.) Hanover argues that the jury trial in Hanover I established that "Brown/TME falsified documents and submitted fake

9

invoices, phony receipts, and doctored bank account statements in connection with the insurance claims at issue." (ECF No. 100-1 at PageID 1414.) Hanover further argues that in Hanover I, Brown admitted to falsifying vendor information on the theft claim for Studio B and John Falls." (Ibid.) Hanover asserts that "forcing Hanover to pay Brown[/TME] (the confessed ringleader of the fraudulent scheme) the BPP insurance proceeds is an unjust result that would violate long-recognized public policy of Tennessee." (Ibid.)

In their response, Brown/TME argue that although the jury in Hanover I found that there were "misrepresentations in the filing of [Brown's] claim for the fire and theft losses to Studio A[,]" the jury also found "that there was no misrepresentation and no fraud by John Falls in filing a claim for losses suffered by Studio B" at issue here, and thus Hanover's argument is precluded. (ECF No. 120 at PageID 3414.)

The Federal Rules of Civil Procedure mandate the entry of summary judgment where "no genuine dispute as to any material fact" exists and "the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" if it provides a basis for a "rational trier of fact to find for the non-moving party." Matsushita, 475 U.S. at 587 (citation omitted). Here, the parties present conflicting facts regarding the issue of whether the fraud committed by Brown/TME in submitting their claims to Hanover extended to claims filed for Studio B. In ruling on a motion for Summary Judgment, "the court must view the facts and all the inferences drawn from such facts in the light most favorable to the nonmoving party." Bell, 355 F.3d at 392. Construing the preceding facts in way most favorable to Brown/TME, Hanover's MSJ on whether payment of the BPP insurance proceeds to Brown/TME would violate Tennessee public policy is **DENIED**.

b. *Intervenor Complaint*

Hanover argues that "[t]he Court should also award Hanover summary judgment on the intervenor complaint filed by counsel for Falls on their own behalf[,]" because "intervenor complaint asserts a claim for attorneys' fees against Brown/TME." (ECF No. 100-1 at PageID 1416.) Hanover concedes, however, that such summary judgment should be granted only "if the Court declares that Brown/TME is not entitled to the BPP insurance proceeds." (Ibid.) Given the Court's holding above, this argument is rendered moot. The Court therefore will not address the response or reply arguments on this matter. (See ECF Nos. 121, 124.) Hanover's MSJ as to the intervenor complaint is **DENIED**.

c. *Brown/TME's Counterclaim for Conversion*

Finally, Hanover asserts that it "is entitled to summary judgment on Brown/TMEs counterclaim for conversion," because: (1) "the undisputed evidence in this case demonstrates that Coastal Technology Services ("CTS")—not Hanover—moved certain equipment out of the damaged building in Memphis to a warehouse in Florida pursuant to CTS's contract with Brown/TME[;]" and (2)"Brown/TME's counterclaim for conversion is barred by the doctrine of res judicata/claim preclusion." (Id. at PageID1397-8.) Brown/TME argue that the Court has already addressed this issue when it granted in part and denied in part Hanover's Partial Motion to Dismiss. (ECF No. 94.) In its reply, Hanover argues that Brown/TME "do not present any opposition to Hanover's argument that conversion claim is barred by preclusion because it could have and should have been asserted in the RICO action[,]" and thus the Court should grant Hanover's MSJ and dismiss the conversion claim with prejudice. (ECF No. 124 at PageID 3981.)

The evidence submitted by Hanover, including the declaration of CTS representative Eric Malee, CTS's Agreement with TME, Equipment Condition Reports from CTS, the Writ of Execution from the Middle District of Florida, and the declaration of Hanover representative Gary Barkman all indicate that Hanover was not involved with the removal of Brown/TME's property. (ECF Nos. 100-10, 100-11.) Further, Brown/TME do not dispute—or even address—any of this evidence. Therefore, Brown has not raised a genuine issue for trial regarding Hanover's alleged conversion.

Even if that was not the case, Brown/TME's claim for conversion is barred by claim preclusion/res judicata in light of their RICO case filed several months before the filing of the claim in the instant action. See Brown v. Hanover Am. Ins. Co., Inc., No. 2:20-cv-02415-JPM-cgc (W.D. Tenn. Oct. 27, 2020) ("RICO Action"). As the Court outlined above, for claim preclusion to apply, the movant has to show that: (1) the underlying judgment was rendered by a court of competent jurisdiction; (2) the same parties were involved in both suits, (3) the same claim was or should have been asserted in both suits; and (4) the underlying judgment was final and on the merits. See Jackson, 387 S.W.3d at 491. The RICO Action was decided by this Court, and affirmed by the Sixth Circuit, thus both elements one (1) and four (4) have been met. (See RICO Action, ECF Nos. 51-2, 58; Brown v. Hanover Am. Ins. Co., 2022 WL 1100461 (6th Cir. Apr. 13, 2022). Both Brown/TME and Hanover have been parties to both actions, thus the second element has also been met.

The key question then becomes if the conversion claim was or should have been asserted in both suits. The RICO complaint alleged that "[b]y assuming possession of the gear and equipment and transporting it out-of-state, [CTS/Hanover have] stolen or converted the personal property and deprived Brown, TME and Mott of its use and possession." (RICO Action, ECF

12

No. 1 ¶ 40.) Brown/TME further sought "compensatory damages for the value of the musical instruments, gear and recording equipment at the time it was converted or stolen by the Defendants[,]" in the RICO Action. (Id. a 24.) The complaint in the RICO Action therefore appears to have already asserted conversion claims against Hanover.

Even if that was not strictly true, Brown/TME should have asserted those charges in the RICO Action. "[A] claim's compulsory status depends on whether (1) the claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (2) the claim is one that the party 'has' at the time that the party is to file his responsive pleading." Bauman, 808 F.3d at 1101 (quoting Kane v. Magna Mixer Co., 71 F.3d 555, 562 (6th Cir. 1995)). Here, unlike in the denied motion to dismiss, the counterclaim arises out of the same transaction or occurrence as the RICO Action. Both the RICO claims and the instant conversion counterclaim stem from the events pertaining to removal of Brown/TME's equipment by CTS to Florida. The situation is therefore fundamentally different than when this Court ruled on Hanover's Partial Motion to Dismiss.[2] Furthermore, the record clearly shows that Brown/TME were aware of the claim for conversion during the RICO Action, as their complaint repeatedly refers to conversion of their equipment and asks the Court to grant relief for such conversion. The third element of claim preclusion is therefore met.

For the reasons explained above, the Court **GRANTS** summary judgment for Hanover as to Brown/TME's counterclaim for conversion.

### D. Result of the Instant Order on the Outstanding Motions

---

[2] There, the Court held that the counterclaims did not arise out of the same transaction or occurrence as Hanover I because "[t]he Original Action was brought to recover insurance payments that Hanover paid to TME/Brown based on allegedly falsified documentation following an arson fire of a recording studio[,]" while the "counterclaim for conversion in the instant action relates to Hanover's alleged conversion of personal property[.]" (ECF No. 94 at PageID 1372-3.)

13

As a result of the holdings in this Order the following outstanding motions are **MOOTED**: (1) Hannover's Motion to Exclude Testimony of John Falls' Proffered Expert Robert Vance (ECF No. 102); (2) Hannover's Motion to Exclude Testimony of John Falls' Proffered Expert Pete Matthews (ECF No. 103); and (3) Falls' Motion in Limine Prohibiting Hanover from Challenging Falls' Business Income (ECF No. 104).

## IV.    CONCLUSION

For the foregoing reasons, John Falls' Motion for Summary Judgment as to Hanover is **GRANTED**, Hanover's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  TME/Brown's counterclaim for conversion is **DISMISSED WITH PREJUDICE**.  Hanover's Motions to Exclude Testimony of John Falls' Proffered Experts Robert Vance and Pete Mathews are **MOOTED**.  Falls' Motion in Limine Prohibiting Hanover from Challenging Falls' Business Income is **MOOTED**.

**SO ORDERED**, this 23rd day of October, 2023.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE